UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,                                  Case No. 17-12356-t11

       Debtor.

ROBERT MARCUS,

       Plaintiff,

v.                                                                                         Adv. No. 19-1027-t

NATHAN SEGAL and CO., INC.,

       Defendant.

## **OPINION**

Plaintiff filed this adversary proceeding seeking to recover alleged preferential transfers made to Defendant. Before the Court are cross motions for summary judgment on the issue whether Plaintiff's preference claim is barred by the statutes of limitations in 11 U.S.C. §§ 546(a) and 550(f).[1] Based upon the undisputed facts, the Court holds that the claim is barred. Defendant's motion therefore will be granted.

### I.     FACTS[2]

The Court finds that there is no genuine dispute as to the following facts:

Debtor operated a large dairy in southern New Mexico. Defendant Nathan Segal & Co., Inc., is a vendor who sold cattle feed to Debtor.

---

[1] All statutory references are to 11 U.S.C. unless otherwise indicated.
[2] The Court took judicial notice of the docket in the main case and this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

Debtor filed the main bankruptcy case on September 15, 2017, followed by schedules and a SOFA on October 4, 2017. The SOFA included a six page list of "Bill Payments for All Vendors." Included in the list are three payments to Segal, totaling $318,781.89, within the 90-day preference period.

Debtor was not able to reorganize. Metropolitan Life Insurance Company, the Production Credit Association of Southern New Mexico, and the Unsecured Creditors Committee proposed and obtained confirmation of a liquidating plan on June 14, 2018. Under the plan, a liquidating trustee (Phillip Mitchell) was appointed to sell estate assets, bring avoidance and other actions, and distribute the net cash to creditors.

On July 5, 2018, Mitchell moved the Court to enter a final decree and close the case. Unbeknownst to the Court, Mitchell resigned two weeks later. No objections to the motion were filed, so the Court entered final decree closing the case on July 27, 2018. The final decree provided:

> The Court shall retain jurisdiction to enter orders after the entry of the final decree on the Water Rights Avoidance Action, any administrative claims or professional fee claims, *any pending adversary proceedings*, any questions, clarifications, or orders necessary to effectuate the provisions of the Plan, Order of Confirmation, or Liquidating Trust Agreement, and any claims objections with respect to which no order has yet been entered.

(emphasis added).

Plaintiff Robert Marcus accepted the appointment as the replacement trustee on July 31, 2018, four days after the case was closed.

On December 27, 2018, Marcus moved to amend the final decree "solely to provide that the Court shall retain jurisdiction of all adversary proceedings (not just 'pending' adversary proceedings), including the claims against the Debtor's general partners, Avoidance Actions, and other Causes of Action." The motion drew no objections, so on January 29, 2019, the Court entered an order modifying the final decree as requested. The amended decree provided:

> The Court shall retain jurisdiction after the entry of the final decree on: the Water Rights Avoidance Action; any administrative claims or professional fee claims; any pending *or future* adversary proceedings, including, but not limited to, Avoidance Actions, all Causes of Action, and any actions against the Debtor's partners; any questions, clarifications, or orders necessary to effectuate the provisions of the Plan, Order of Confirmation, or Liquidating Trust agreement; and any claims objections with respect to which no order has yet been entered.

(emphasis added).

Between February 15, 2019 and March 11, 2019, Marcus filed 24 adversary proceedings, almost all of which sought to avoid alleged preferential transfers. Only this proceeding, filed on March 11, 2019, and one against Debtor's general partners are unresolved.[3]

Marcus has not sought to reopen the case or set aside the final decree.

## II. DISCUSSION

A.  Summary Judgment Standards.

Summary judgment is appropriately granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56, since amended); *see also* Fed. R. Bankr. Pro. 7056 (applying Fed. R. Civ. P. 56 to adversary proceedings). "With respect to cross-motions for summary judgment, the Court must evaluate each motion on its own merits, construing all inferences in favor of the party against whom the motion under consideration is made." *Behar v. Certain Underwriters at Lloyds, London*, 554 F. Supp. 2d 1262, 1265 (W.D. Okla. 2008) (citing *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000).

---

[3] In the proceeding against the general partners, one of the partners was dismissed and the others filed chapter 7 bankruptcy cases.

B.   Bankruptcy Code Statutes of Limitations.

Segal argues that this proceeding is barred by Sections 546(a) and 550(f), which prohibit the commencement of certain avoidance and recovery actions after a case has been closed or dismissed. Section 546(a) (Limitations on avoiding powers) provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
>   (1) the later of--
>     (A) 2 years after the entry of the order for relief; or
>     (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>   (2) the time the case is closed or dismissed.

Section 550 governs the liability of a transferee of an avoided transfer. Section 550(f) provides:

> An action or proceeding under this section may not be commenced after the earlier of--
>   (1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or
>   (2) the time the case is closed or dismissed.

Because there is no question that this proceeding was filed about seven and a half months after the main case was closed, the plain language of §§ 546(a)(2) and 550(f)(2) supports Segal's position that the claim is barred. Segal's position is supported, further a decision in this district holding that "Section 546(a)(2) is clear and unambiguous: actions to avoid preferences may not be filed after the case is closed." *Sandoval v. Century Bank (In re Sandoval)*, 470 B.R. 195, 200 (Bankr. D.N.M. 2012)*; accord Singer v. Kimberly Clark Corp. (In re American Pad & Paper Co.)*, 478 F.3d 546 556 (3d Cir. 2007) ("[W]e do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce. Achieving a better policy outcome—if what [appellant] urges is that—is a task for Congress, not the courts.") (quoting *Hartford Underwriters Ins. Co.,* 530 U.S. 1, 13-14 (2000).

C. Exceptions to the "Plain Language" Rule.

Courts in other districts have recognized several possible exceptions to the "plain language" interpretation of *Sandoval*.[4]

1. The "properly and finally closed" exception. In *Gross v. Petty (In re Petty)*, 93 B.R. 208 (9th Cir. BAP 1988), the debtor failed to disclose prepetition transfer of property he made to his parents. The trustee declared the case a "no asset" case, whereupon it was closed. The trustee moved to reopen the case after he was alerted to the undisclosed transfer. Upon reopening, the trustee brought an avoidance proceeding against the parents, who, in turn, asserted a statute of limitations defense under §546(a). The bankruptcy court overruled the defense and granted summary judgment in favor of the truestee. The BAP affirmed, ruling that the case should not have been closed because it had not been fully administered, given the undisclosed asset. The court held:

> Once it has been established that the case was not properly closed and may be reopened to administer the assets of the debtor's estate it would be anomalous to bar the collection of the very assets sought to be recovered because the case was closed. The primary reason for reopening the case would be prohibited. Accordingly, the word "closed" in § 546(a)(2) must be read to mean properly and finally closed.

*Id.* at 212; *see also Schroeder v. First Union National Bank of Virginia (In re Schroeder)*, 173 B.R. 93, 95 (Bankr. D. Md. 1994), rev'd on other grounds, 182 B.R. 723 (D. Md. 1995) (following *Petty*); *Redmond v. Kopp (In re Kopp)*, 383 B.R. 179, 187 (Bankr. D. Kan. 2008) ("when an asset remains undisclosed and unknown to the trustee, actions or proceedings otherwise barred by § 546(a)(2) may be pursued after the case is reopened for that cause"); *White v. Boston (In re White)*, 104 B.R. 951, 955 (S.D. Ind. 1989) ("To permit an erroneous closing to bar reopening

---

[4] In fact, Judge Starzynski, who authored *Sandoval*, noted with approval the equitable tolling exception discussed below.

would allow the debtors to profit from their own misconduct."); *Price v. Manufacturers and Traders Trust Co. (In re Price)*, 260 B.R. 653, 657 (Bankr. W.D.N.Y. 2001) (reopening a case reopens the time to commence avoidance actions).

2. <u>Setting aside the final decree under FRBP 9024</u>. Another potential exception is if the court grants a motion under Federal Rule of Bankruptcy Procedure ("FRBP") 9024 to set aside the final decree. In *Moyer v. ABN AMRO Mtg. Group, Inc. (In re Feringa)*, 376 B.R. 614 (Bankr. W.D. Mich. 2007), for example, the court stated:

> As for Rule 9024, it stands ready as a safety valve between Section 350 and Section 546(a)(2) to ensure that the balance otherwise struck is not unfairly applied. In other words, Rule 9024 provides the means for a trustee to still commence an avoidance action in a reopened case if, for example, that case had been previously closed because of mistake or inadvertence. Indeed, there is nothing unique with Rule 9024 serving this function in this instance, for Rule 9024 provides similar protection against mistakes and other inadvertent conduct in the myriad of other situations when the entry of an order or judgment might otherwise cause an adverse result

376 B.R. at 622-23; *see also* 5 Collier on Bankruptcy ¶ 546.02[2] ("if an order closing a case mistakenly is granted and subsequently is vacated pursuant to Federal Rule of Bankruptcy Procedure 9024, the case was never "closed" for purposes of section 546(a)(2)").

3. <u>Equitable tolling</u>. The third potential exception is equitable tolling of the statute of limitations because of fraud or concealment. In *White v. Boston,* for example, the court stated:

> The equitable tolling doctrine has been invoked several times to toll the statute of limitations in section 546 cases (*In re Candor Diamond Corp.*, 76 B.R. 342, 350 (Bankr. S.D.N.Y. 1987), *Schlueter v. Cozad,* 674 F. Supp. 1351, 1355 (C.D. Ill. 1987), *In re Butcher,* 72 B.R. 247, 250 (Bankr. E.D. Tenn. 1987)) as well as cases under the predecessor statute 11 U.S.C. § 11. *See In re Friedman,* 15 B.R. 493, 494 (Bankr. N.D. Ill. 1981). Because this court finds that in this case the need to thwart fraudulent concealment in bankruptcy cases outweighs the need for finality of dispositions that section 546(a) provides, the trustee's motion for reopening is not automatically barred by the statute of limitations.

104 B.R. at 956-57; *see also Moratzka v. Pomaville (In re Pomaville)*, 190 B.R. 632, 636-38 (Bankr. D. Minn. 1995) (to the same effect); *In re Opus East, LLC*, 2013 WL 4478914, at *6

(Bankr. D. Del.) (same); *Sandoval*, 470 B.R. at 202-03 (a long line of Supreme Court cases recognize that federal statutes of limitations do not run if a plaintiff has been injured by fraud and remains ignorant of it).

D. <u>The Exceptions Do Not Apply in This Case</u>.

In this case, the final decree was entered in July 2018. The asset at issue (this preference claim) was fully disclosed to the parties and to Mitchell, the original liquidating trustee. Marcus has not sought to set aside the final decree under FRBP 9024, nor has he argued that grounds exist for equitable tolling. Because none of the recognized exceptions to the statute of limitations apply, Marcus is barred from bringing the claim against Segal.

Marcus argues that the case was not "properly and finally closed" so the Court should allow the proceeding to continue under the *Petty* exception. This argument must be overruled. The *Petty* line of cases involves debtors who did not disclose valuable assets to the trustee. The *Petty* rationale is that when a trustee who does not know about a valuable asset makes a "no asset determination" and allows a case to be closed, the estate has not been fully administered, and hence closure is improper. *See Petty*, 93 B.R. at 212; *Kopp*, 383 B.R. at 188; *Price*, 260 B.R. at 656. The *Petty* exception arguably ignores the plain language of §§ 546(a) and 550(f) to avoid an inequitable result. As Judge Starzynski pointed out in *Sandoval*, in many cases the same result could be achieved under the equitable tolling exception. *Sandoval*, 470 B.R. at 202.

Here, there is no allegation of nondisclosure. On the contrary, it is undisputed that the potentially preferential payments were listed on Debtor's SOFA. In addition, "avoidance actions" are mentioned a number of times in the liquidating plan and disclosure statement. Thus, the facts of this case do not come within the *Petty* exception. As the court said in *Kopp*:

> The rule is when an asset has been disclosed or the trustee is aware of the asset and has had an opportunity to pursue an avoidance action but fails to do so in the time

> provided, the limitations statute bars resurrecting the avoidance claim when the case is reopened.

383 B.R. at 187 (citing *Mullin v. Kalil (In re Mullen)*, 337 B.R. 744, 749 (Bankr. D.N.H. 2006)).

Rather than argue nondisclosure or other inequitable conduct, Marcus argues that it was "inappropriate," "precipitous," and "premature" for Mitchell to ask for a final decree when he did. That may well be true. If so, the available remedy, if any, would be under FRBP 9024, not *Petty* or equitable tolling.

Furthermore, in every instance where a court adopted the *Petty* exception, the case had been reopened before the trustee asked for relief from § 546(a). Here, in contrast, Marcus seeks a declaration that the case, which remains closed, was closed improperly. Granting Marcus' requested relief would lead to the anomalous situation of a closed case that is deemed, at least for some purposes, not to have been closed.

The Court concludes that Marcus' argument in favor of employing the *Petty* exception is not well taken.

        E.        <u>Amending the Final Decree did not Address the Statute of Limitations Problem</u>.

Marcus apparently realized early on that Mitchell closed the case too soon. Marcus' motion to amend the final decree attempted to fix one problem created by early closure, i.e., the Court's jurisdiction over proceedings that had not yet been brought. The amended decree, entered without objection, addressed this issue. However, it did not address the statute of limitations problem caused by closing the case prematurely. Marcus may have had good reasons not to try to fix that problem in the fall of 2018, before any of the avoidance actions had been filed. Whatever the reason, Marcus has never attempted to deal with the limitations problem.

F.  Segal Did Not Waive His Statute of Limitation Defense.

Marcus argues that Segal waived his statute of limitations defense when he failed to object to the motion to amend the final decree. That argument must be overruled. The proposed amendment to the final decree did not address case closure or the limitations periods in §§ 546(a) and 550(f). For Marcus to be able to assert waiver, he would have had to explicitly mention the limitations problem caused by the premature case closing and propose that the Court grant relief from that problem. Waiver is an "intentional abandonment or relinquishment of a known right." *United States v. Bowline*, 917 F.3d 1227, 1232 (10th Cir. 2019); *Yates v. American Republics Corp.*, 163 F.2d 178, 179 (10th Cir. 1947). There can be no waiver when the subject right was never mentioned, challenged, or otherwise put at issue.

Segal asserted the statute of limitations defense in his answer to Marcus' complaint. He was not required to do so earlier.

G.  Unless the Final Decree is Set Aside, Marcus' Claim Against Segal Would be Barred.

When courts have allowed trustees to bring avoidance actions after reopening a case, they acknowledge that the other possible limitations periods in §§ 546(a)(1) and 550(f)(1) still apply. *See, e.g., Price*, 260 B.R. at 656 ("A reopening of the case, therefore, serves to reopen the limitations period, *subject to the other limitations* of section 546(a)…and section 550(f)") (emphasis added); *Petty*, 93 B.R. at 212 ("It is important to note that if the two year limitation provided in § 546(a)(1) had run, the trustee's action would have been barred"); *In re Stanke*, 41 B.R. 379, 381 (Bankr. W.D. Mo. 1984) ("It is quite another thing if the two year statute has run as that bars an avoiding action even if the case has never been closed."). To obtain effective relief, Marcus would have to do more than reopen the case—he would have to obtain a court order setting aside the final decree *ab initio*.

III. CONCLUSION

Segal is entitled to summary judgment in its favor on the statute of limitations defense.[5] The limitations periods in §§ 546(a) and 550(f) are clear. While there are exceptions to the strict rules in those Code sections, Marcus does not come within any of them. By a separate final judgment, the Court will grant Segal's motion for summary judgment and deny Marcus'.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 29, 2020
Copies to: counsel of record

---

[5] Because of the Court's ruling, it will not address Segal's defense based on Texas' "Animal Feed Lien."